## SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

**ROSSI M. POTTS**
**14124 Bishop Claggett Court**
**Upper Marlboro, MD. 20772**

          **Plaintiff,**            **Civil Action Number** 05-0005115

**v.**       '05 SEP -1 A9:18

**HOWARD UNIVERSITY**
**2041 Georgia Avenue, N.W.**
**Washington, DC 20060**

          **Defendant,**

---

## COMPLAINT FOR REMEDIES AND RELIEF

### PARTIES

1. The plaintiff is an individual residing at 14124 Bishop Claggett Court, Upper Marlboro, Maryland 20772. He recently was, and at all times pertinent hereto was, an employee of the Defendant, Howard University Hospital.

2. The Defendant is a University located at 2041 Georgia Avenue, NW, Washington, DC. 20060.

### JURISDICTION

3. This court has jurisdiction pursuant to, **Title VII of the Civil Rights Act of 1964 Civil Rights Act of 1991, Wrongful Termination, Retaliation, Breach of Contract, Fraud/Sherman Acts, Antitrust Civil Process Act, Discrimination/RICO Act.**

1



## Count 1, WRONGFUL TERMINATION: Under Local, Common, and Federal Law

1.  Plaintiff claims for remedies and relief under local, common, and federal law.

2.  Plaintiff claims that he was terminated for providing safety measures to a patient, that was in compliance with Defendant's hospital policy and JCAHO standards. If discharge of an employee undermines public policy, the injured employee has a claim that the discharge was wrong. Retaliation, short of discharge is in violation of Title VII.

3.  Plaintiff claims that he was harassment coupled with threats to be discharge which, is retaliation during investigations by enforcement agencies as part of the proceedings of existing discrimination and retaliation. "Participation in proceedings" is absolutely protected and that an employer may not retaliate against an employee, even for false and malicious statements made as part of proceedings." Pettway v. American cast Iron Pipe Co. (5th Cir. 1969). Deravin v. Kerik (2d Cir. 2003). Writing a letter to the DCOHR and EEOC complaining about the agency's failure to find "reasonable cause" that also asserted employer corruption was considered a motion for reconsideration and thus protected "participation." Pettway v. American Cast Iron Pipe Co., supra (5th Cir. 1969). Participation also includes reasonable gathering of non-confidential evidence in anticipation of a formal proceeding. Grant v. Hazellett Strip-Casting Corp. (2d Cir. 1989).

"Opposition" to employer practices include, making internal complaints about the treatment being accorded unto plaintiff or other individuals, (Fine v. Ryan Intern. Airlines (7th Cir. 2002), filing grievances with labor organization. It is unlawful for an employer to "discriminate" against employees because of their participation or opposition, an obligation not qualified by "terms and conditions of employment. An action is "discriminatory" if it is likely to deter plaintiff or other employees from engaging in the protected activity by intimidation of termination, and thus could include providing negative performance evaluations or inflicting petty indignities. Cf. Lederberger v. Strangler (8th Cir. 1997)(retaliation must affect "term and condition of employment"). State non-discrimination statues proscribe sex, discrimination, the discharge of the employee on such grounds, may preclude an assertion of a common law "wrongful discharge". It violates Public Policy and/or possibly Hospital Policy/Compliance to dismiss a health care professional for refusing to violate defined and enforceable professional ethical obligations. Shearin v. The E.F. Hutton Group, Inc. (Del. 1994).

4. Constitutional and State/Common Law, defamation, intentional infliction of harm, etc.view wrongful discharge as a tort for which the employee may recover damages for foreseeable lose that include consequential injuries such as pain, suffering, emotional distress, and loss of reputation, all which Plaintiff claims as related adverse actions. Cagle v. Burns & Roe, Inc. (Wash. 1986). To punish, and thus to deter future wrongdoing, an employee may recover punitive damages for

malicious misconduct, especially for intentional violations that deprives and /or
intimidate employee's of there employment rights. Some courts, however, view
wrongful discharge as a contract breach, and limit damages to the "loss of
bargain:" (e.g., lost wages and related incidental economic loses). Punitive
damages, as well as damages for non-monetary injuries such as pain, suffering, and
humiliation are not generally recoverable for contract breaches. Sterling Drug, Inc.
v. Oxford (Ark. 1988).

5. Plaintiff claims that his constitutional rights had been violated by the Defendant,
such as, liberty infringed if an adverse action that stigmatizes the Plaintiff's
reputation so that pursuit of similar employment is substantially hindered. An
accusation of dishonesty or immorality infringes his liberty as well, and
thus requires procedural due process. Putman v. Keller (8th Cir. 2003). Procedural
Due Process "Property" and " Liberty:" The Due Process Clauses of the Fifth and
Fourteenth Amendments require due process of the law for governmental "takings"
of Liberty and Property.

## Count 2, RETALIATION: Under Title VII

1. Plaintiff claims that the Defendant is violation of Defamation in character, by
stating that Plaintiff is playing the role of a doctor. Plaintiff's position is in
disagreement and opposes the statement made by the Defendant. Plaintiff claims
that the above statement imposes false characteristics and torment his physical and
mental well – being.

2.  Plaintiff claims that during the investigative proceedings conducted by DCOHR
and EEOC, that he was granted with the approval of Dr. Brown, Bernice the
Director of the Echo. Laboratory to attend a recommended course and it was
declined by Dr. Williams, Deborah the acting chief of the Division
Cardiology.  It was indicated to me that she was uneasy with my presents as a
Tech. in the Echo. Lab. employee talk for now.  My objective for that year of 2001
was to focus on credentialing due to the escalating tension between me and
Defendant however, I applied for annual leave and it was granted so I attended the
conference scheduled for May 8, 2001 to May 11, 2001 since all expensive was
pre- paid by me.  On July 5, 2001 I received a letter of pre-termination for claims
of insubordination which turned out to be insufficient on July 26, 2001.  On July
27, 2001, I received a memorandum from Dr. Williams, Deborah indicating that I'
am a major liability for Howard University Hospital in so many words.  On
September 24, 2001 Dr. Brown, Bernice forwarded a memorandum to the
Administrator Director Mr. McKennie, Randall indicating the importance of
medicare reimbursements by having either a certified laboratory or certified
personnel.  The choice to certify personnel was the least expensive and it was
favored.  On October 2, 2001 approval to attend a registry seminar arranged from
October 5, 2001 to October 7, 2001, and scheduled with reimbursement upon
completion of seminar.  Upon completion of the seminar reimbursements would be

furnished to the participates within 30-45 days.  Over 90 days passed and I continuously inquired about the reimbursement and no one to include the Administrative Directors could give a reason for the delay in reimbursement. Another one of the Administrative Directors Mr. Grant, Steven implied to me that I would not receive any thing; Mr. Grant is a good friend of Dr. Williams, Deborah as I have noticed by the many occasional visits to her office.  On January 18, 2002 I filed a grievance regarding reimbursement and the original copy was to be sent to Mr. Grant, Steven.  On February 7, 2002 I received a memorandum from Dr. Williams, Deborah regarding patient care issues and claims of patient abandonment.  On March 7, 2002 I received a reimbursement check for $400.00 which was stated in the grievance to be made whole but it was not.  So, I inquired to the Administrator Director Mr. McKennie, Randall that the reimbursement was partially paid and he implied that he was uncertain about the pay process.  I notified the Tina Fox the union president and mentioned to her about what I was going through to receive reimbursement for the required seminar and the unnecessary disciplinary actions that was arisen and she stated that its possibly retaliation and to expect such activities.  On April 4, 2002 I received a letter of pre-termination and on April 19, 2002 I received a letter of termination. Ironically, in February Dr. Williams, Deborah was emphasizing patient care issues and elaborating on acts of patient abandonment and professional handling of the patients however, the following month of March Dr. Williams, Deborah actions to

6

terminate me after I made such great efforts to provide professional patient care and safety to patients who were in need.  This just goes to show that Dr. Williams, Deborah concerns are not focus on professional handling of patients but to seeking out acts of reprisal and termination as she pleases!

3.  Plaintiff claims that the above actions in number (2), are known as disparate treatment they are perceived to be petty indignities use to wrongfully discharge the Plaintiff as part of the Defendant's adopted system to deprive the plaintiff of his federal protected rights.

4.  Plaintiff claims that the disparate treatment altered the terms and conditions of his employment and deprived him of liberty and property.

5.  Plaintiff claims that the causal connection for the above disparate treatment was Because the Plaintiff opposed of the continues unlawful activities and participated In opposition to Defendant employment practices with state and federal Enforcement agencies.

## Count 3, BREACH OF CONTRACT: Under Title 11, Local, Common, and Federal Law

1.  Plaintiff claims that Defendant violated the provision of the Collective Bargaining Agreement Article XIII.

2.  Plaintiff claims that Article XIII, States that, Discipline and Discharge section 1.) explains that except for cases in which employee conduct is likely to result in damage to hospital property or injury to other individuals, disciplinary measures

shall be taken in the following order:  1.) Counseling, 2.) Reprimand (must be in

writing), 3.) Suspension (notice must be in writing), 4.) Termination (notice must

be in writing).  Plaintiff was terminated from the Defendant's premises effective,

April 19, 2002 without any counseling from his immediate supervisor Dr. Bernice

D. Brown, regarding termination, nor did he receive any letter of reprimand or

suspension.  Plaintiff was simply recommended for pre- termination without any

verbal or written notification from his immediate supervisor.  This sort of action to

terminate Plaintiff occurred more than once in the same manner, which shall serve

as a reckless pattern of employment practices.

3. Plaintiff claims that the Defendant had adopted a system to disadvantage

employment rights employee's that have adverse impacts on union members.

4. Plaintiff claims adverse impacts on employee's are unlawfully reckless and malice

to union members and other employee's that should work in a harmonious

environment.

5. Plaintiff claims that Defendant employment practices are unlawful and disruptive

To fellow employee's thus, making team work hostile and discriminatory among

Men and women employee's.

6. Plaintiff claims that Defendant's unlawful influence over the corrupt labor

organization causes unlawful acts of internal union affairs and/or "otherwise

discriminating" in the internal operation.  Intention misrepresentation in failing or

refusing to refer for employment, or classifying its members membership or applicants in a way which tend to deprive an individual union member of employment opportunities. On the surface it appears that the union is causing unlawful acts by the employer or others. The Defendant is responsible/liable for segregating the union and union members along racial and gender lines discriminating both in the internal affairs of the union. EEOC v. International Longshoremen's Ass'n (5th Cir. 1975).

**Count 4, FRAUD: Under Title 18, Sherman Act, Antitrust Civil Process Act**

1. Plaintiff claims that Defendant deliberately denied that he had valid and Proper credentials to the DCOHR and EEOC during interrogatories when investigation was being conducted by those enforcement agencies.

2. Plaintiff claims that his credentials play a key part in determining a promotion opposed to demotion.

3. Plaintiff claims that a promotion was substantial for advancement in the work force and future employment opportunities.

4. Plaintiff claims that Defendant obstructed the administration process to disadvantage the Plaintiff's protective activity and class intentionally to advantage their liability.

5. Plaintiff claims that Defendant adopted a system to disadvantage employee's Thus, having adverse impact on future or prospective employee's and union Members.

9

6.  Plaintiff claims that Defendant should be deterred from future corruption and investigated by the Department of Justice to determine fraudulent activities.

7.  Plaintiff will testify in court that Defendant is involved into white collard crimes such as, bribery, corruption, conspiracy, and other unlawful doing's like intentional contract breaching, discrimination, retaliation, antitrust violations, fraud, defraud, and perhaps other crimes.

8.  Plaintiff would assist the Department of Justice and be persistent to end this kind of corruption for future generations hopefully before this adopted system reaches Defendants international relations.  Plaintiff simply opposes Defendant's employment practices.

9.  Plaintiff will make individual claims for both the Defendant and labor organization For the purpose of deterring the complete unlawful adoptive system.

10.  Plaintiff claims that Local Union 2094, labor organization is coherently in compliance with the unlawful actions of the Defendant and he will apply the RICO Act to charge the local union independently from the Defendant because, the labor organizations are exempt from the Sherman Acts 1, 2, 3, to a certain point.

11.  Plaintiff claims that the union excepts the bribery of the Defendant after all the union is liable for intentional misrepresentation.  Local Union 2094 is in violation of their fiduciary duty of fair representation imposed by the National Labor Relations Act that prohibits negotiation of discriminatory contractual terms. Steel v. Louisville & N.R. Co.  (S. Ct. 1944).

Although the union only breached their fiduciary duty never the less they remain to be liable for contractual conspiracy and bribery if proven.

12. Plaintiff claims that neither the union or Defendant is trust worthy to up hold the "Law of the Land", and it's obvious to the Plaintiff and hopefully it will be known to Defendant's friends, family, and other establishments.

## Count 5, DISCRIMINATION: Under Title VII and RICO ACT: Under Title 18

1. Plaintiff claims that Local Union 2094, Defendant's labor organization discriminate in the internal operations of representation of it's members by failing or refusing to refer for employment, or classifying its membership or applicants in way which tend to deprive union members of employment opportunities.

2. Plaintiff claims that union contributes to causing unlawful acts by the employer.

3. Plaintiff claims that union segregate members along gender lines that violates Title VII, discriminating in the internal affairs of the union classifying members in a way that tends to deprive them of employment opportunities, such as liberty, and property.

4. Plaintiff claims that the union is an association which exists in whole or in part to deal with Defendant concerning employee grievance, labor disputes, and terms or conditions of employment that can be trusted by Plaintiff.

5. Plaintiff claims that both the Defendant and Union conspire to practice discriminatorily in practice and overtly to disadvantage Plaintiff protected class.

11

5. Plaintiff understands that Title VII preserves the right to apply different terms and conditions "pursuant to a bona fide seniority system provided that such differences are not the result of an intention to discriminate between genders as in Plaintiff's case, but both the Defendant and union violated many provisions of the Collective Bargaining Agreement intentional to disadvantage the Plaintiff's protected class, activity, and other employment rights.

6. Plaintiff claims that both Defendant's and union's motive was explained and unexplained disparate treatment adopted as a system to disadvantage Union members and especially the Plaintiff's federal protected class and activities.

7. Plaintiff claims that both Defendant and union retained and concealed exculpatory Evidence that was crucial to Plaintiff's DCOHR and EEOC investigation thus, depriving him of liberty and property.

8. Plaintiff claims that it is unlawful to conspire to impose different qualifications or performance standards on men and women that's opposed of as unlawful discriminatory practice.  Supra, 8.01 and 14.01.

9. Plaintiff claims that it is gender discrimination if such policies and/or provision are enforced against on gender but not against the other such as in the Plaintiff's case. Duchon v. Cajon Co. (6th Cir. 1986).  Cf Plantner v. Cash & Thomas Contractors, Inc. (11th Cir. 1990).

**EQUITABLE RELIEF:**

1. Plaintiff has no adequate remedy at law.

WHEREFORE, the Plaintiff prays that this court grant him the following:

1. Plaintiff's court costs, expert witness expense, and attorney fees

2. Such other and further remedies and relief as this court deems just.

Rossi M. Potts
14124 Bishop Claggett Ct.
Upper Marlboro Maryland 20772
(301) 574-2541

13

CA Form 1

## Superior Court of the District of Columbia
### CIVIL DIVISION
500 Indiana Avenue, N.W., Room JM-170
Washington, D.C. 20001 Telephone: 879-1133

*Plaintiff*

vs.                                                '05  SEP -1  Civil Action 05-0005115

*Defendant*

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Rossi M. Potts
_____
Name of Plaintiff's Attorney

14124 Bishop Claggett Ct.
_____
Address   Upper Marlboro, Md. 20772

(301) 574-2541
_____
Telephone

*Clerk of the Court*

By _____
                    Deputy Clerk

Date _____

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

CV(6)-456/May 01



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

ROSSI M POTTS
   Vs.
HOWARD UNIVERSITY

C.A. No.    2005 CA 005115 B

### INITIAL ORDER

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order, and any General Order issued **by the judge** to whom the case is assigned. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(o).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive reading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge as an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Civil Assignment Office (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to:  Judge JOHN M CAMPBELL

Initial Conference: 9:30 am, Friday, October 07, 2005
Location:  Courtroom 517
        500 Indiana Avenue N.W.
        WASHINGTON, DC  20001

Caio.doc

## SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

**ROSSI M. POTTS**
**14124 Bishop Claggett Court**
**Upper Marlboro, MD. 20772**

      **Plaintiff,**

      **Judge: John M. Campbell**

      **Civil Action Number: 05-0005115**

      **v.**

**HOWARD UNIVERSITY**
**2041 Georgia Avenue, N.W.**
**Washington, DC 20060**

      **Defendant,**

RECEIVED
CIVIL CLERK'S OFFICE
AUG 2 9 2005
SUPERIOR COURT
OF THE DISTRICT OF COLUMBIA
WASHINGTON, DC

## AMENDED COMPLAINT

### PARTIES

1. The Plaintiff is an individual residing at 14124 Bishop Claggett Court, Upper Marlboro, Maryland 20772. He recently was, and at all times pertinent hereto was, an employee of the Defendant, Howard University.

2. The Defendant Howard University, located at 2041 Georgia Avenue, NW, Washington, DC. 20060.

### JURISDICTION

3. This court has jurisdiction pursuant to, **Title VII of the Civil Rights Act of 1964 Civil Rights Act of 1991, Wrongful Termination, Retaliation, Retaliation under Equal Pay Act of 1963 (EPA), Breach of Contracts, Fraud/Sherman Acts, Antitrust Civil Process Act, Discrimination/Chapter 9, RICO Act, D.C. M. R. and Codes, to include Titles: 11, 15, 18 of U.S.C.**

1

**Count 1, WRONGFUL TERMINATION: Under Washington D.C. Local,**

**Common, and Federal Laws**

1. Plaintiff claims for remedies and relief under local, common, and federal law.

2. Plaintiff claims that he was terminated for providing safety measures to a patient, that was in compliance with Defendant's hospital policy and JCAHO standards. If discharge of an employee undermines public policy, the injured employee has a claim that the discharge was wrong. Retaliation, short of discharge is in violation of Title VII, due to participating in DCOHR and EEOC investigation. Under Title VII, the Civil Rights Act of 1991, it is also unlawful for intentional retaliation.

3. Plaintiff claims that he was harassed and retaliated against coupled with threats to be discharged which occurred during investigations by enforcement agencies as part of the administration proceedings of existing questionable discrimination and retaliation. "Participation in proceedings" is absolutely protected and that an employer may not retaliate against an employee, even for false and malicious statements made as part of proceedings. "Pettway v. American cast Iron Pipe Co. (5th Cir. 1969)." "Deravin v. Kerik (2d Cir. 2003)." Writing a letter to the DCOHR and EEOC, complaining about the agency's failure to find "reasonable cause" that also asserted employer corruption was considered a motion for reconsideration and thus protected "participation." Pettway v. American Cast Iron Pipe Co., supra (5th Cir. 1969).

Participation also includes reasonable gathering of non-confidential

evidence in anticipation of a formal proceeding.  Grant v.  Hazellett Strip-Casting

Corp.  (2d Cir.  1989).

"Opposition" to employer practices include, making internal complaints about the

treatment being accorded unto plaintiff or other individuals, (Fine v.  Ryan Intern.

Airlines (7th Cir.  2002), filing grievances with labor organization.  It is unlawful

for an employer to "retaliation" against employees because of their participation

or opposition, an obligation not qualified by "terms and conditions of employment.

An action is "retaliatory" if it is likely to deter plaintiff or other employees

from engaging in the protected activity by intimidation of termination, and thus

could include providing negative performance evaluations or inflicting petty

indignities.  Cf. Lederberger v.  Strangler (8th Cir.  1997)(retaliation must affect

"term and condition of employment").  State non-discrimination statues proscribe

sex, discrimination, the discharge of the employee on such grounds, may preclude

an assertion of a common law "wrongful discharge".  It violates Public Policy

and/or possibly Hospital Policy/Compliance to dismiss a health care professional

for refusing to violate defined and enforceable professional ethical obligations,

as in Plaintiff's case.  Shearin v.  The E.F. Hutton Group, Inc.  (Del.  1994).

4.  Constitutional and State/Common Law, defamation, intentional infliction of harm,

etc. view wrongful discharge as a tort for which the employee may recover

damages for foreseeable lose that include consequential injuries such as pain,

3

suffering, emotional distress, and loss of reputation, all which Plaintiff claims as related adverse actions. Cagle v. Burns & Roe, Inc. (Wash. 1986). To punish, and thus to deter future wrongdoing, an employee may recover punitive damages for, malicious misconduct, especially for intentional violations that deprives and /or intimidate employee's of there employment rights. Some courts, however, view wrongful discharge as a contract breach, and limit damages to the "loss of bargain:" (e.g., lost wages and related incidental economic loses). Punitive damages, as well as damages for non-monetary injuries such as pain, suffering, and humiliation are not generally recoverable for contract breaches. Sterling Drug, Inc. v. Oxford (Ark. 1988).

5.  Plaintiff claims that his constitutional rights had been violated by the Defendant, such as, liberties infringed; if an adverse action that stigmatizes the Plaintiff's reputation so that pursuit of similar employment is substantially hindered, an accusation of dishonesty or immorality infringes his liberty as well, and thus requires procedural due process. Putman v. Keller (8th Cir. 2003). Procedural Due Process "Property" and " Liberty:"

## Count 2, RETALIATION: Under Title VII

1.  Plaintiff claims that the Defendant is in violation of Defamation in character, by stating that Plaintiff is playing the role of a doctor. Plaintiff's position is in

4

disagreement and opposes the statement made by the Defendant. Plaintiff claims

that the above statement imposes false characteristics and torment his physical and

mental well – being, due to Defendant' s practices to discrimination, retaliation,

fraud, antitrust violations, obstruction, and especially by concealing exculpatory

evidence such as Plaintiff's employment application, qualifications, job

description, and credentials.

2. Plaintiff claims that during the investigative proceedings conducted by DCOHR

and EEOC, that he was granted with the approval of Dr. Brown, Bernice the

Director of the Echocardiography Laboratory to attend a recommended course and

it was declined by Dr. Williams, Deborah the acting chief of the Division of

Cardiology. It was indicated to Plaintiff that she Dr. Williams, D. was uneasy

with his presents as a Tech. employed in the Echo. Lab; employee talk for now.

Plaintiff's objective for the year of 2001 was to focus on credentialing due to the

escalating tension between him and Defendant however, Plaintiff applied for

annual leave and it was granted so Plaintiff attended the conference scheduled for

May 8, 2001 to May 11, 2001 since all expensive was pre- paid by Plaintiff. On

July 5, 2001 Plaintiff received a letter of pre-termination for claims of

insubordination which turned out to be insufficient on July 26, 2001. On July 27,

2001, Plaintiff received a memorandum from Dr. Williams, Deborah indicating

that he was a major liability for Howard University Hospital in so many words.

5

On September 24, 2001 Dr. Brown, Bernice forwarded a memorandum to the

Administrator Director Mr. McKennie, Randall indicating the importance of

medicare reimbursements by having either a certified laboratory or certified

personnel.  The choice to certify personnel was the least expensive and it was

favored.  On October 2, 2001 approval to attend a registry seminar arranged from

October 5, 2001 to October 7, 2001, and scheduled with reimbursement upon

completion of seminar.  Upon completion of the seminar reimbursements would be

furnished to the participates within 30-45 days.  Over 90 days passed and

Plaintiff continuously inquired about the reimbursement and, no one to include the

Administrative Director could give a reason for the delay in reimbursement.

Another one of the Administrative Directors Mr. Grant, Steven implied to Plaintiff

in front of the Administrative Director Mr. W. Randall McKinnie, that

Plaintiff would not receive any thing; Mr. Grant is a good friend of Dr. Williams,

Deborah, noticed by the Plaintiff from Mr. Grant, Steven visits to her office.

On January 18, 2002 Plaintiff filed a grievance regarding reimbursement and the

original copy was to be sent to Mr. Grant, Steven.  On February 7, 2002 I received

a memorandum from Dr. Williams, Deborah regarding patient care issues and

claims of patient abandonment.  Around, or on March 7, 2002 Plaintiff received a

reimbursement purchase order for $400.00, which was stated in the grievance to

be made whole but it was not.  Plaintiff inquired to the Administrator Director

Mr. McKennie, Randall that the reimbursement was partially paid and he implied

that he was uncertain about the pay process.

6

Plaintiff notified Tina Fox the union president and mentioned to her about what he was going through to receive reimbursement for a required seminar and the unnecessary disciplinary actions that was arisen and Mrs. Fox, Tina, stated that its possibly retaliation and to expect such activities from Defendant. On April 4, 2002 Plaintiff received a letter of pre-termination and on April 19, 2002 Plaintiff received a letter of termination. Ironically, in <u>February</u> Dr. Williams, Deborah was emphasizing patient care issues and elaborating on acts of patient abandonment and professional handling of patients however, the month of <u>March</u> Dr. Williams, Deborah actions to terminate Plaintiff after he made such great efforts to provide professional patient care and safety to a patient whom was in need. Plaintiff claims that Defendant's misconduct is in conflict with public and hospitals policy/standards. This just goes to show that Dr. Williams, Deborah concerns are not focused on professional handling of patients but to seeking out acts of reprisal and termination as she pleases!, making Defendant liable for their unlawful practices.

3. Plaintiff claims that the above actions in number (2), are known as disparate treatment they are perceived to be petty indignities used to wrongfully discharge Plaintiff as part of the Defendant's adopted system to deprive the plaintiff of his federal protected rights, and employment privileges such as, public/hospital policies, etc..

4. Plaintiff claims that the continuation of disparate treatment altered the terms and conditions of his employment and deprived him of liberty and property.

5. Plaintiff claims that the causal connection for the above disparate treatment was Because, he opposed of the continues unlawful activities, and that he participated in opposition to Defendant employment practices with state and federal Enforcement agencies and/or DCOHR and EEOC.

## Count 3, BREACH OF CONTRACT: Under Title 11, Local, Common, and Federal Law

1. Plaintiff claims that Defendant violated the provision of the Collective Bargaining Agreement Article XIII.

2. Plaintiff claims that Article XIII, States that, Discipline and Discharge section 1.) explains that except for cases in which employee conduct is likely to result in damage to hospital property or injury to other individuals, disciplinary measures shall be taken in the following order: 1.) Counseling, 2.) Reprimand (must be in writing), 3.) Suspension (notice must be in writing), 4.) Termination (notice must be in writing). Plaintiff was terminated from the Defendant's premises effective, April 19, 2002 without any counseling from his immediate supervisor Dr. Bernice D. Brown, regarding termination, nor did he receive any letter of reprimand or suspension. Plaintiff was simply recommended for pre- termination without any verbal or written notification from his immediate supervisor. This sort of action to terminate Plaintiff occurred more than once in the same manner, which shall serve as a reckless pattern of employment practices, of disparate treatment.

3. Plaintiff claims that the Defendant had adopted a system to disadvantage his employment rights, which could have adverse impact on future union members.

8

4.  Plaintiff claims that the above adverse impact on employee's are unlawfully reckless and malice to union members and other employee's that work and/or provide services to Defendant.

5.  Plaintiff claims that Defendant employment practices are unlawful and disruptive to fellow employee's thus, making team work hostile and discriminatory among men and women employee's.

6.  Plaintiff claims that Defendant's unlawful influence over the corrupt labor organization causes unlawful acts of internal union affairs and/or "otherwise discriminating" in the internal operation.  Intention misrepresentation in failing or refusing to refer for employment, or classifying its members membership or applicants in a way which tend to deprive an individual union member of employment opportunities.  On the surface it appears that the union is causing unlawful acts by the employer or others.  The Defendant is responsible/liable for segregating the union and union members along gender lines discriminating both in the internal affairs of the union. EEOC v.  International Longshoremen's Ass'n (5th Cir.  1975).

## Count 4, FRAUD: Under Title 18, Sherman Act, Antitrust Civil Process Act

1.  Plaintiff claims that Defendant deliberately denied that he had valid and proper credentials to work in the employment position that was provided by Defendant.  Enforcement agents for DCOHR and EEOC during interrogatories, was informed by Defendant that Plaintiff only had credentials for EMT and Phlebotomy, during the investigation by those above enforcement agencies.

9

2.  Plaintiff claims that his credentials played a key part in determining his role as an employee and the continuous impact of disparate treatment/petty indignities.

3.  Plaintiff claims that a promotion was substantial for advancement in the work force and future employment opportunities. Plaintiff claims his credentials was key to his employment status with Defendant's establishment.

4.  Plaintiff claims that Defendant obstructed the administration process to disadvantage the Plaintiff's protective activity and class intentionally to advantage their liability for future conflict concerning the Plaintiff's employment.

5.  Plaintiff claims that Defendant adopted a system to disadvantage employee's thus, depriving them from complaining about adverse impacts suffered by employee's and union members by Defendant's predatory employment practices of conspiring and monopolization in both employment and market in commerce to bribery and corruption, for medical market services from employee's to advantage their marketing strategies in the territory of Washington D.C., Metropolitan area.

6.  Plaintiff claims that Defendant should be deterred from future corruption and investigated by the Department of Justice to determine fraudulent activities.

7.  Plaintiff will testify in court that Defendant is involved into white collard crimes such as, bribery, corruption, conspiracy, and other unlawful doing's like intentional contract breaching, discrimination, retaliation, antitrust violations, fraud, defraud, and perhaps other crimes regarding workers that provide services in commerce for money to exchange and trade in commerce, and/or with restraint to trade and

10

compete in commerce for services provided to medical markets such as in Plaintiff's case.

8.  Plaintiff would assist the Department of Justice and be persistent to end this kind of corruption for future generations hopefully before this adopted system reaches other employers nationally and/or internationally. Plaintiff simply was totally opposed to Defendant's employment practices.

9.  Plaintiff will make individual claims for both the Defendant and labor organization for the purpose of deterring the complete unlawful adoptive system.

10. Plaintiff claims that Local Union 2094, labor organization is coherently in compliance with the unlawful actions of the Defendant and he will apply the RICO Act to charge the local union independently from, the Defendant because, the labor organizations are exempt from the Sherman Acts 1, 2, and 3 to a certain point.

11. Plaintiff claims that the union excepts the bribery of the Defendant after all the union is liable for intentional misrepresentation. Local Union 2094 is in violation of their fiduciary duty of fair representation imposed by the National Labor Relations Act that prohibits negotiation of discriminatory contractual terms. Steel v. Louisville & N.R. Co. (S. Ct. 1944) and Plaintiff claims that he opposed Defendant's employment practices by filing grievances, etc., that resulted in EPA Violations, under Equal Pay Act of 1963, set by the Fair Labor Standards Act, enforced by the EEOC. Retaliation under the (EPA), Civil Rights Act of 1963, have no cap on relief! Although the union only breached their fiduciary duty never the less they remain to be liable for contractual conspiracy and bribery if proven.

11

12. Plaintiff claims that neither the union or Defendant is trust worthy to up hold the "Law of the Land", and it's obvious to the Plaintiff and hopefully it will be known to Defendant's friends, family, and other establishments.

**Count 5, DISCRIMINATION: Under Title VII and RICO ACT: Under Title 18**

1. Plaintiff claims that Local Union 2094, Defendant's labor organization discriminated in the internal operations of representation of it's members by failing or refusing to refer for employment, or classifying its membership or applicants in a way which tend to deprive union members of employment opportunities.

2. Plaintiff claims that union contributes to causing unlawful acts by the employer.

3. Plaintiff claims that union segregate members along gender lines that violates Title VII, discriminating in the internal affairs of the union, by classifying members in a way that tends to deprive them of employment opportunities, such as liberty, and property.

4. Plaintiff claims that the union is an association which exists in whole or in part to deal with Defendant concerning employee grievances, labor disputes, and terms or conditions of employment that was thought to be trusted by Plaintiff, and other employee's.

5. Plaintiff claims that both the Defendant and Union conspire to practice discriminatorily and overtly to disadvantage Plaintiff's and possibly other employee's protected class and activity, also having adverse impact on U.S. Uniformed Military Veterans.

12

6. Plaintiff understands that Title VII preserves the right to apply different terms and conditions "pursuant to a bona fide seniority system provided that such differences are not the result of an intention to discriminate between genders as in Plaintiff's case, but both the Defendant and union violated many provisions of the Collective Bargaining Agreement intentional to disadvantage the Plaintiff's protected class, activity, and other employment rights, by conspiring and intentionally breaching contracts of trust in trade and/or commerce towards Plaintiff, and perhaps his future employment as a worker providing medical services in the medical market.

7. Plaintiff claims that both Defendant's and union's motive was explained and unexplained disparate treatment adopted as a system to disadvantage and deceive union members and especially the Plaintiff from participating in his federally protected class and activities.

8. Plaintiff claims that both Defendant and union retained and concealed his exculpatory evidence that was crucial to Plaintiff's DCOHR and EEOC investigation thus, depriving Plaintiff from liberty, property and to compete for future employment in trade and/or commerce in the medical market.

9. Plaintiff claims that it is unlawful to conspire to impose different qualifications or performance standards on men and women that's opposed of as unlawful discriminatory practice. Supra, 8.01 and 14.01.

10. Plaintiff claims that it is gender discrimination if such policies and/or provision are enforced against on gender but not against the other such as in the Plaintiff's case.

Duchon v. Cajon Co. (6th Cir. 1986). Cf Plantner v. Cash & Thomas Contractors, Inc. (11th Cir. 1990).

**EQUITABLE RELIEF:**

1. Plaintiff has no adequate remedy at law.

2. Plaintiff request trial by "Grand Jury".

3. Plaintiff request for treble damages if trial is necessary.

WHEREFORE, the Plaintiff prays that this court grant him the following:

1. Plaintiff's court costs, expert witness expense, and attorney fees.

2. Such other and further remedies and relief as this court deems just.

Rossi M. Potts
14124 Bishop Claggett Ct.
Upper Marlboro Maryland 20772
(301) 574-2541

14

EEOC Form 161 (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: **Rossi Potts**
**14124 Bishop Claggette Ct**
**Upper Marlboro, MD 20772**

From: **Washington Field Office**
**1801 L Street, N.W.**
**Suite 100**
**Washington, DC 20507**

| | |
|---|---|
| ☐ | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR § 1601.7(a))* |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **10C-2002-00161** | **David Gonzalez,**<br>**State & Local Coordinator** | **(202) 419-0714** |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

☐ Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

☐ While reasonable efforts were made to locate you, we were not able to do so.

☐ You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☒ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

## - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this Notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Dana R Hutter*

**APR 1  2005**

Enclosure(s)

**Dana Hutter,**
**Acting Director**

*(Date Mailed)*

cc:  **Norma B. Leftwich**
**HOWARD UNIVERSITY HOSPITAL**
**2400 6th Street, N W**
**Suite 320**
**Washington, DC 20060**

Enclosure with EEOC
Form 161 (3/98)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS  --**    **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90
days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**.  Once this 90-day period
is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney,
you should do so promptly.  Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you
received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your
suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or
the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State
court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking
to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the
facts of your case which shows that you are entitled to relief.  Your suit may include any matter alleged in the charge
or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally,
suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where
relevant employment records are kept, where the employment would have been, or where the respondent has its main
office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are
bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS -- Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back
pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.  For
example, if you were underpaid under the EPA for work performed from 7/1/00 to 12/1/00, you should file suit **before
7/1/02** – not 12/1/02 -- in order to recover unpaid wages due for July 2000.  This time limit for filing an EPA suit is
separate from the 90-day filing period under Title VII, the ADA or the ADEA referred to above.  Therefore, if you also plan
to sue under Title VII, the ADA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days
of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

## ATTORNEY REPRESENTATION -- Title VII and the ADA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction
in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be
made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts
to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because
such requests do not relieve you of the requirement to bring suit within 90 days.

## ATTORNEY REFERRAL AND EEOC ASSISTANCE -- All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any
questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to
inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide
your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files
are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge
file, **please make your review request within 6 months** of this Notice.  (Before filing suit, any request should be
made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*